**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| BAYLOR UNIVERSITY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| BLEUX LLC and UMAR BRIMAH d/b/a | § | |
| THE DIA GANG, | § | |
| | § | |
| Defendants. | § | |

**COMPLAINT FOR TRADEMARK INFRINGEMENT AND DILUTION,
UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN,
UNJUST ENRICHMENT, AND CYBERSQUATTING**

Plaintiff Baylor University ("Baylor" or the "University") files this Complaint against Defendants Bleux LLC and Umar Brimah d/b/a The Dia Gang.[1]

**PARTIES**

1.     Baylor is a Texas non-profit corporation having a business address of One Bear Place #97034, Waco, Texas 76798-7034.

2.     On information and belief, Defendant Bleux LLC is a Texas limited liability company with an address of 2912 South 3rd Street, Waco, Texas 76706-6457.

3.     On information and belief, Defendant Umar Brimah d/b/a The Dia Gang is an individual with an address of 2912 South 3rd Street, Waco, Texas 76706-6457.

**NATURE OF THIS ACTION - JURISDICTION OF THE COURT**

4.     This is an action for trademark infringement, unfair competition, trademark dilution and cybersquatting under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et*

---

[1] The University is filing a Motion for a Preliminary Injunction concurrently herewith.

*seq*. ("Lanham Act"); trademark infringement and trademark dilution under the Texas Business and Commerce Code; and trademark infringement, unfair competition, and unjust enrichment under Texas common law.

5.      This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121 and Chapter 85 of the Judiciary and Judicial Procedure Code, 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

## FACTS

### A.  Baylor and Its Marks

6.      Baylor is the world's largest Baptist university and the oldest continually operating institution of higher education in the state of Texas.  It was originally chartered in 1845 by the Republic of Texas, and later reincorporated under the laws of the State of Texas in 1886.

7.      Baylor provides a wide curriculum of educational services through its eight colleges and schools at both the undergraduate and graduate levels, including arts, sciences, business, law, nursing, education, engineering, computer science, music, social work, and theology.

8.      For many years, Baylor and its licensees have continuously used marks that consist of or incorporate BAYLOR in commerce in connection with its high-quality educational services, as well as on a wide variety of related goods and services (the "BAYLOR Mark").

9.      Since at least as early as 1912, Baylor has frequently and continuously used the BU mark in a word and stylized format, in which the letters B and U interlock (the "BU Logo"), as shown below.



10.     Baylor has also adopted and long and continuously used various marks that incorporate a bear design, including the design mark provided directly below (collectively, the "Bear Design Mark"), in connection with its goods and services.



11.     Baylor has also adopted and long and continuously used the mark SIC 'EM BEARS and various other marks incorporating the term SIC 'EM (the "SIC 'EM Marks") for years in connection with its goods and services.

12.     Baylor operates an extensive trademark licensing program, in which it licenses its trademarks and service marks under controlled conditions for use in connection with a wide range of products and services sold to the consuming public, including apparel and accessories. Baylor's school colors are green and gold, so many of the products bearing these marks incorporate that color scheme. Examples of these products are shown below.



13.     As a result of the University's long and extensive use of the BAYLOR mark, the BU Logo, and the Bear Design Mark, Baylor has developed an enormous amount of goodwill, public recognition, and strong rights in those marks, which consumers have come to know and trust as symbols of quality.

14.     As a result of extensive and widespread use and promotion by Baylor, the BAYLOR Mark, the BU Logo, and the Bear Design Mark have become extremely well known and widely recognized by consumers in the State of Texas and throughout the United States to indicate the source of Baylor's goods and services.

15.     The BAYLOR Mark is famous pursuant to 15 U.S.C. § 1125(c) and Tex. Bus. & Com. Code § 16.103. The mark became famous in the United States and Texas before Defendants' use described herein.

16.     The BU Logo is well-known in the United States, and famous in the state of Texas pursuant to Tex. Bus. & Com. Code § 16.103. The mark became famous in Texas before Defendants' use described herein.

17.     The Bear Design Mark is well-known in the United States, and famous in the state of Texas pursuant to Tex. Bus. & Com. Code § 16.103. The mark became famous in Texas before Defendants' use described herein.

18.     In addition to its extensive common law rights in the BAYLOR Mark, the BU Logo, and the Bear Design Mark, Baylor owns numerous federal trademark registrations for those marks, including but not limited to the following:

| Mark | Registration No. | Goods/Services |
|------|------------------|----------------|
| BAYLOR | 1465910 | Class 41:  Education and entertainment services, namely conducting college level courses, and related entertainment services, namely, college sports events, fine art productions, concerts and lectures |

| BAYLOR | 1858559 | Class 16:  Pens, pencils, three-ring binders, wire bound writing pads, calendars, bumper stickers, decals, and stickers |
|---|---|---|
| BAYLOR | 1936714 | Class 21:  Glasses, mugs, cups, and tumblers |
| BAYLOR | 4958203 | Class 25: Shirts, sweatshirts, sweaters, sweatpants, ties, hats, shorts, jackets, warm up suits, and socks |
| BAYLOR UNIVERSITY | 1935130 | Class 14: Rings<br><br>Class 25: Clothing products, namely shirts, sweatshirts, sweat pants, jerseys, T-shirts, shorts, jackets, hats, dress shirts, and socks<br><br>Class 41: Education and entertainment services, namely conducting college level courses, and related entertainment services, namely college sporting events, fine art productions, concerts and lectures |
| BAYLOR UNIVERSITY | 1923603 | Class 16:  Pens, pencils, three-ring binders, wire-bound writing pads, calendars, bumper stickers, decals, and stickers<br><br>Class 21:  Dishes, drinking glasses, mugs, cups, and tumblers |
| BAYLOR NATION | 4840954 | Class 41: Educational services, namely, conducting college level courses, and related entertainment services, namely, organizing and conducting college sports events, fine art productions, concerts, and lectures |
| BAYLOR NATION | 4841369 | Class 25: T-shirts |
| BU (Stylized)  | 1468277 | Class 16: calendars, notebooks, decals, notecards |
| BU (Stylized)  | 1474216 | Class 21: cups, mugs, tumblers, and glasses |

| | | |
|---|---|---|
| BU (Stylized)  | 1558080 | Class 25: clothing, namely t-shirts, shorts, sweatshirts, sweaters |
| BAYLOR BEARS B and design  | 1467391 | Class 21: Cups and tumblers |
| BAYLOR B and bear design  | 1467491 | Class 25: T-shirts |
| BAYLOR and bear design  | 1916400 | Class 16:  Pens, pencils, bumper stickers, decals, and stickers |
| B and bear design  | 5007920 | Class 16: Decals; bumper stickers |
| B and bear design  | 5007921 | Class 21: Drinking glasses, namely, tumblers |
| B and bear design  | 5007923 | Class 25: Clothing, namely, pullovers, t-shirts, long-sleeved shirts, polo shirts; caps |

All of these registrations except Reg. Nos. 4958203, 4840954, 4841369, 5007920, 5007921, and 5007923 have become incontestable pursuant to 15 U.S.C. § 1065.

19.     Baylor also owns Texas state registrations for the marks BAYLOR and BAYLOR UNIVERSITY covering education and entertainment services in Class 41. Texas Reg. Nos. 4383217 and 4375417.

20.     Each spring, Baylor cancels all classes for one day and hosts a campus-wide festival, during which students attend concerts, participate in athletic events, and enjoy the spring weather. Baylor students began celebrating this day in 1932 and adopted the name "Dia Del Oso" for the festival in 1966. The phrase "Dia Del Oso" translates to "Day of the Bear," a reference to Baylor's mascot, the Baylor Bear. The 2019 DIA DEL OSO festival will take place on April 9.

21.     Since 1966, Baylor has used the marks DIA DEL OSO and DIADELOSO in connection with its spring festival and related goods and services, including clothing, hats, and sunglasses. Examples of these products are shown below:



22.     For many years, Baylor has used the mark DIA, a shortened form of DIA DEL OSO, in connection with its spring festival and related goods and services. Examples of these products are shown below:



23.     Baylor students also widely use the DIA mark as a nickname for Baylor's DIA DEL OSO festival. Such public use independently gives rise to protectable rights in that mark in connection with Baylor's spring festival and related products and services, all of which inure to Baylor's benefit.  Therefore, Baylor claims rights in the DIA mark arising from the public's use, in addition to rights in DIA arising from its own use.

24.     As a result of Baylor's long and extensive use of the DIA Marks, Baylor has developed an enormous amount of goodwill, public recognition, and strong rights in the DIA Marks, which consumers have come to know and trust as symbols of quality.

25.     Baylor owns pending applications with the U.S. Patent and Trademark Office ("PTO") to register the marks DIADELOSO, DIA DEL OSO, and DIA for the following services in Class 41: "Entertainment services, namely, planning and conducting an annual event featuring a variety of activities, namely, athletic tournaments, musical performances, carnival attractions, and the like" in Class 41. U.S. Ser. Nos. 88/354,775; 88/354,830; and 88/354,817. Baylor also owns pending applications to register the marks DIADELOSO and DIA DEL OSO for "shirts; t-shirts" in Class 25 and a pending application to register the mark DIA for "shirts; t-shirts; tank tops" in the same class. U.S. Ser. Nos. 88/354,768; 88/354,821; 88/354,816. Baylor filed the pending applications for DIADELOSO and DIA DEL OSO in Class 41 on a "use" basis under 15 U.S.C. § 1051(a). The applications claim April 1, 1966 as the date of first use for the Class 41 services. Baylor filed the remaining applications on an "intent-to-use" basis under 15 U.S.C. § 1051(b).

26.     The marks DIA DEL OSO, DIADELOSO, and DIA are collectively referred to herein as the DIA Marks. The DIA Marks, the BAYLOR Mark, the BU Logo, and the Bear Design Mark are collectively referred to herein as the "University Marks."

**C.     Defendants' Unlawful Activities**

27.     Defendants are attempting to capitalize on Baylor's DIA DEL OSO festival by organizing and promoting a rival concert using the DIA Marks. Defendants scheduled their concert to take place on the same day as Baylor's DIA DEL OSO festival at a location across the street from Baylor's McLane Stadium.

28.     To solidify the association between their concert and Baylor's DIA DEL OSO festival, Defendants adopted the name "The Dia Gang" to promote their concert and associated products and services.

29.     Defendants repeatedly have used "Dia" in promotional material for their concert. Visitors can purchase tickets for Defendants' concert at the linked page at https://www.eventbrite.com/e/bleux-presents-lil-jon-bsr-tickets-58408056068?goal=0_095a562127-85eb2d8a46-20150597&mc_cid=85eb2d8a46&mc_eid=34e1441ada (the "Eventbrite Page"), which has promoted the concert by urging visitors to "get ready for Dia!"  **Exhibit A.**

30.     Defendants also repeatedly use "Dia" in posts promoting their concert on their "bleuxevents" account on Twitter. For example, the linked post at https://twitter.com/BleuxEvents/status/1107859358266855424 advertises the concert by stating "We bet spring break was fun but now it's time to chug some Emergen-C and get ready for Lil Jon to take the stage for Dia!" **Exhibit B.**

31.     Defendants also registered the domain thediagang.com, which they have recently used for an online retail store that offered apparel and accessories displaying the University Marks (details below). While Defendants recently took the website down in response to Baylor's repeated objections, they did the same thing just a few weeks ago after promising to comply, yet put it back up just days later and continued to offer their infringing and diluting merchandise.

32.     Defendants used "DIA" and "DIADELOSO" as marks in connection with the promotion and sale of clothing and accessories, often in combination with presumably unlicensed, third-party marks. Representative examples of such use are shown directly below:



33.     Defendants also used "Baylor" in connection with the promotion and sale of clothing and accessories. An example of such use is shown directly below. The text reads "WE ON A BAYLOR LIGHT BEAM THIS IS A DIA DREAM."



34.     Defendants also used a design mark that incorporates a bear very similar to the Bear Design Mark, an interlocking BU, and "DIA," as well as Baylor's school colors. An example of Defendants' t-shirt bearing this design is provided below, left, and a close-up of the design is provided below, right.



35.     The marks used by Defendants, as identified in paragraphs 27-34, are hereinafter referred to as the "Defendants' Marks." Representative printouts showing Defendants' use of the Defendants' Marks in connection with the sale and promotion of clothing and accessories are attached hereto as **Exhibit C**.

36.     Defendants also created "thediagang" accounts on Facebook, Twitter, and Instagram and promoted their products in posts to those accounts. The posts featured many of the

University Marks as hashtags, including #BAYLOR, #BAYLORNATION, and #BAYLORDIA. The posts also contained Baylor's marks SIC 'EM BEARS and SIC 'EM as hashtags. An example of one of these posts is shown below:



37.     Defendants have used and are using the Defendants' Marks in commerce. On information and belief, Defendants have promoted their concert and associated products and services by sending thousands of targeted solicitations by email to Baylor students at their official university email accounts. The emails invite the recipient to buy tickets to Defendants' concert, visit Defendants' website at thediagang.com, and purchase Defendants' products, bearing Defendants' Marks. **Exhibit D**. Defendants are currently sending these solicitations in these weeks before the DIA DEL OSO festival, occurring in April 2019.

38.     Defendants forged the email headers of most of these emails in order to make the messages appear to have originated from Baylor or an organization or individual affiliated with Baylor. Defendants achieve this effect by mimicking the format of email addresses associated with Baylor University. For example, on March 17, 2019, Defendants sent a mass email to Baylor students appearing to come from the email address dia_gang@baylor.edu, promoting a

St. Patrick's Day sale on Defendants' products and on March 20, 2019, Defendants sent thousands of emails to Baylor students appearing to come from the email address Lil_John@baylor.edu [sic], with the Subject line "Lil Jon Dia Giveaway Results."

39.     Further, Defendants use "Dia" in the subject lines of their mass emails to Baylor students to associate themselves with Baylor's DIA DEL OSO festival. In addition to the "Lil Jon Dia Giveaway Results" email, Defendants sent a mass email to Baylor students with the subject line "F**king Limited Dia tees" on March 3, 2019 and sent another mass email with the subject line "Open Letter to Students: Dia 2019" on March 26, 2019. In their most recent email, Defendants claim that Baylor has "increase[d] its efforts to end Dia" and promise to follow up Defendants' 2019 concert "with a larger dia" in 2020. Exhibit #. By making these claims, Defendants are representing themselves as the true source of DIA events, which is false.

40.     These mass emails display Defendants' business name "The Dia Gang" in Defendants' mailing address and Copyright notice and the URL www.thediagang.com.

41.     Upon information and belief, Defendant Umar Brimah attended Baylor as a student and was aware of the University's DIA DEL OSO festival. Defendants were aware of Baylor and the University Marks when they adopted the Defendants' Marks, and the Defendants' Marks are intended, and will be understood, to refer to Baylor or the University Marks.

42.     Upon information and belief, Defendants' intent in connection with the use of the Defendants' Marks is to trade on the goodwill of the University Marks.

43.     Upon information and belief, use of the Defendants' Marks is intended, and will be understood, to refer to, or suggest an affiliation or association with, Baylor and its DIA DEL OSO festival.

44.     Defendants' goods and services are highly similar or identical to the goods and services for which Baylor has used and registered the University Marks.

45.     Defendants' goods and services travel in the same or similar channels of trade as Baylor's goods and services and are or will be purchased and used by the same or similar types of consumers who purchase and use Baylor's goods and services.

46.     Defendants are not affiliated with or sponsored by Baylor, and Baylor has not authorized Defendants to use the University Marks, or any confusingly similar marks.

47.     The Defendants' Marks would be recognized by prospective purchasers as pointing uniquely and unmistakably to Baylor.

48.     The Defendants' Marks are a close approximation of Baylor's identity.

49.     Baylor is not connected with the goods that are sold by Defendants under the Defendants' Marks.

50.     Baylor's identity is of sufficient fame or reputation that when the Defendants' Marks are used in connection with Defendants' goods, a connection with Baylor would be presumed.

51.     Baylor has notified Defendants of its trademark rights and has attempted to resolve this dispute with Defendants prior to filing this lawsuit. However, Defendants have engaged in a pattern in which they initially comply with some of Baylor's requests, but then resume their infringing use shortly after.

**D.     Effect of Defendants' Activities**

52.     Defendants' unauthorized use of the Defendants' Marks is likely to cause confusion, to cause mistake, or to deceive consumers and potential consumers of the parties as to some affiliation, connection, or association of Defendants' business with Baylor, or as to the origin, sponsorship, or approval of Defendants' goods or services by the University.

53.     Defendants' unauthorized use of the Defendants' Marks falsely designates the origin of Defendants' goods, falsely or misleadingly describes and represents facts with respect to Defendants and their goods, and falsely suggests a connection with Baylor.

54.     Defendants' unauthorized use of the Defendants' Marks enables Defendants to trade on and receive the benefit of goodwill built up at great labor and expense by Baylor over the years, and to gain acceptance for its goods and services not solely on his own merits, but on the reputation and goodwill of Baylor, the University Marks, and Baylor's products and services.

55.     Defendants' unauthorized use is likely to dilute the BAYLOR Mark in the United States and Texas.

56.     Defendants' unauthorized use is likely to dilute the BU Logo and the Bear Design Mark in Texas.

57.     Defendants' use of the University Marks is inconsistent with Baylor's messaging and its mission to foster a Christian environment for its students. For example, Defendants' use of the name "The Dia Gang" and their sale of shirts displaying the message "I WENT TO DIADELOSO AND ALL I GOT WAS THIS F**KIN T SHIRT."

58.     Defendants' unauthorized use of the Defendants' Marks unjustly enriches Defendants at Baylor's expense.  Defendants have been and continue to be unjustly enriched by obtaining a benefit from the University by taking undue advantage of Baylor and its goodwill. Specifically, Defendants have taken undue advantage of the University by trading on and profiting from the goodwill in the University Marks developed and owned by the University, resulting in Defendants wrongfully obtaining a monetary and reputational benefit for their own business.

59.     Defendants' unauthorized use of the Defendants' Marks removes from Baylor the ability to control the nature and quality of products and services provided under the University

Marks and places Baylor's valuable reputation and goodwill in the hands of Defendants, over whom Baylor has no control.

60.     Unless these acts of Defendants are restrained by this Court, they will continue, and they will continue to cause irreparable injury to Baylor and to the public for which there is no adequate remedy at law.

## COUNT I: FEDERAL TRADEMARK INFRINGEMENT

61.     Baylor repeats the allegations above as if fully set forth herein.

62.     The acts of Defendants complained of herein constitute infringement of Baylor's federally registered marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

63.     Defendants' acts complained of herein have been deliberate, willful, intentional, or in bad faith, with full knowledge and conscious disregard of Baylor's rights in the University Marks, and with intent to cause confusion and to trade on Baylor's vast goodwill in its marks.  In view of the egregious nature of Defendants' infringement, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## COUNT II: FEDERAL UNFAIR COMPETITION & FALSE DESIGNATION OF ORIGIN

64.     Baylor repeats the allegations above as if fully set forth herein.

65.     The acts of Defendants complained of herein constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT III:  TEXAS STATUTORY TRADEMARK INFRINGEMENT

66.     Baylor repeats the allegations above as if fully set forth herein.

67.     The acts of Defendants complained of herein constitute infringement of Baylor's marks that are registered in Texas, in violation of Texas Business and Commerce Code § 16.102.

## COUNT IV: COMMON LAW TRADEMARK INFRINGEMENT

68.     Baylor repeats the allegations above as if fully set forth herein.

69.     The acts of Defendants complained of herein constitute trademark infringement in violation of the common law of the State of Texas.

## COUNT V:  COMMON LAW UNFAIR COMPETITION

70.     Baylor repeats the allegations above as if fully set forth herein.

71.     The acts of Defendants complained of herein constitute unfair competition in violation of the common law of the State of Texas.

## COUNT VI: FEDERAL TRADEMARK DILUTION

72.     Baylor repeats the allegations above as if fully set forth herein.

73.     The acts of Defendants complained of herein constitute dilution by blurring and by tarnishment of Baylor's famous BAYLOR Mark in violation of 15 U.S.C. § 1125(c).

74.     Defendants willfully intended to trade on the recognition of Baylor's famous BAYLOR Mark and/or to harm the reputation of the mark.

## COUNT VII:  DILUTION UNDER TEXAS LAW

75.     Baylor repeats the allegations above as if fully set forth herein.

76.     The acts of Defendants complained of herein are likely to dilute the famous and distinctive University Marks by blurring and tarnishment in violation of the Texas Anti-Dilution Statute, Tex. Bus. and Com. Code § 16.103.

77.     Defendants willfully intended to trade on the recognition of the University Marks and/or to harm the reputation of those marks.

## COUNT VIII: UNJUST ENRICHMENT

78.     Baylor repeats the allegations above as if fully set forth herein.

79.     The acts of Defendants complained of herein constitute unjust enrichment of Defendants at the expense of Baylor.

### COUNT IX: FEDERAL CYBERSQUATTING

80.     Baylor repeats the allegations above as if fully set forth herein.

81.     Defendant's bad faith registration and use of the domain name thediagang.com constitutes cybersquatting pursuant to 15 U.S.C. §1125(d).

### PRAYER

WHEREFORE, Baylor prays that:

a.     Defendants, their agents, servants, employees, attorneys, and all other persons in active concert or participation with them, be preliminarily and permanently enjoined from using the Defendants' Marks and any other mark or design that is confusingly similar to, or that is likely to dilute, the University Marks, and from any attempt to retain any part of the goodwill misappropriated from Baylor;

b.     Defendants, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, be required to deliver up and destroy all goods, packaging, signage, advertisements, internet postings and advertisements, and any other materials bearing or using the Defendants' Marks, and any other mark or design that is confusingly similar to, or likely to dilute, the University Marks;

c.     Defendants be ordered to transfer the domain name thediagang.com, and any other domain name they own that includes any of the University Marks or anything confusingly similar thereto;

d.      Defendants be ordered to change all social media names, handles or accounts that include any of the University Marks or anything confusingly similar thereto;

e.      Defendants be ordered to file with this Court and to serve upon Baylor, within thirty (30) days after the entry and service on Defendants of an injunction, a report in writing and under oath setting forth in detail the manner and form in which they have complied with the injunction;

f.      Baylor be awarded statutory damages pursuant to 15 U.S.C. § 1117(d);

g.      An accounting be directed to determine Defendants' profits resulting from their activities and that such profits be paid over to Baylor, increased as the Court finds to be just under the circumstances of this case;

h.      Baylor recover its reasonable and necessary attorney fees;

i.      Baylor recover the costs of this action, and prejudgment and post-judgment interest; and

j.      Baylor recover such other relief as the Court may deem appropriate.

Respectfully submitted,

Dated: March 28, 2019                     By: */s/ Wendy C. Larson*
                                           Wendy C. Larson
                                           State Bar No. 24055820
                                           wlarson@pirkeybarber.com
                                           Elizabeth Stafki
                                           State Bar No. 24086835
                                           estafki@pirkeybarber.com
                                           PIRKEY BARBER PLLC
                                           600 Congress Avenue, Suite 2120
                                           Austin, TX  78701
                                           (512) 322-5200
                                           (512) 322-5201 (facsimile)

                                           ATTORNEYS FOR PLAINTIFF
                                           BAYLOR UNIVERSITY